## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAM EDWARD WINTERS,

        Case No. 2:10-cv-12438

     Plaintiff,                  Hon. Lawrence P. Zatkoff

v.

CITY OF OLIVET and
PETER LOTHAMER,

     Defendants.

_____/

### OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 6, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I.  INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment [dkt 23].

The parties have fully briefed the motion.[1]  The Court finds that the facts and legal arguments are

adequately presented in the parties' papers such that the decision process would not be

significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is

hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

---

[1] Defendants filed the instant Motion on April 15, 2011.  Plaintiff filed a response to this Motion
on April 29, 2011 [dkt 24], to which Defendants replied on May 12, 2011 [dkt 25].  As of
Defendants' reply to Plaintiff's response to this Motion, the matter was fully briefed.  Plaintiff
then filed a reply to Defendants' reply on May 26, 2011 [dkt 26], which is not provided for in the
Eastern District of Michigan's Local Rules.  *See* E.D. Mich. L.R. 7.1.  The Court, however,
acknowledges that Plaintiff, as a *pro se* plaintiff, is entitled to more liberal pleading standards
than if he was represented by counsel.  As such, the Court will consider Plaintiff's reply brief.

## II.  BACKGROUND

### A.  FACTUAL BACKGROUND

Plaintiff was employed by Defendant City of Olivet ("City") in its Public Works Department and was supervised by Defendant Peter Lothamer ("Lothamer").[2]  On June 28, 2006, Plaintiff was terminated for violating the terms of a written last chance agreement ("LCA") he signed with the City.  Plaintiff alleges that his termination was actually in retaliation for a closed session meeting he requested with the City of Olivet Board of Education ("School Board"), where Plaintiff sought to dispute the School Board's expulsion of his teenaged nephew, Jeremiah Jewell ("Jewell").[3]

With respect to the events leading up to Plaintiff's termination, on November 15, 2005, the School Board held a private session to consider disciplinary action against Jewell ("Meeting I"). Jewell purportedly committed a criminal sexual act with a special education student on a school bus, which was captured by the school bus' onboard video camera. Plaintiff was in attendance at Meeting I, where the School Board unanimously agreed to expel Jewell.

After the expulsion of his nephew, Plaintiff undertook his own investigation into the incident.  Based on his investigation, Plaintiff claims that Jewell was unjustly expelled.  Plaintiff alleges that his investigation uncovered that: 1) Olivet Public Schools Athletic Director Tom Sowles ("Sowles") "intentionally filed a false police report" with the Eaton County Sheriff's Department and coercively and inappropriately interrogated Jewell's alleged victim; and 2) Olivet Public Schools Superintendent Dave Campbell ("Campbell") mischaracterized the results of psychological evaluations of Jewell.[4]  These claims served as the basis for Plaintiff's request

---

[2] The parties' briefs do not indicate Plaintiff's exact job title.
[3] The School Board is not a party in this matter.
[4]  Plaintiff attaches no evidence to his briefs to substantiate these allegations against Sowles, Campbell, or the School Board.

2

for a second School Board meeting ("Meeting II"), where Plaintiff sought to reveal the results of his investigation to the School Board and ask that it consider reinstating Jewell.

The School Board granted Plaintiff's request and held Meeting II on January 23, 2006. Plaintiff requested that Meeting II be closed and confidential, and the School Board's agenda for that day referred to Plaintiff's matter only as a "Closed Session for Review of Student Disciplinary Hearing"—neither Plaintiff nor Jewell were identified by name. No City employees or officials, including Defendant Lothamer, were present at Meeting II.

Plaintiff alleges that, while at Meeting II, he attempted to reveal his findings and ask for Jewell's reinstatement, but was prevented from doing so. Plaintiff states that he was "repeatedly interrupted." He further alleges that before he could ask that his nephew be reinstated, Campbell recommended that the meeting be adjourned and rescheduled due to time constraints. Meeting II was rescheduled for January 26, 2006, but was subsequently cancelled.

On September 6, 2006, Plaintiff tested positive for marijuana in a random drug test pursuant to his employment with the City. The City was notified of Plaintiff's positive test on September 11, 2006. As a result, the City, through Lothamer, suspended Plaintiff from his job for 30 days. Although Plaintiff could have been terminated solely on account of the positive drug test, he was presented with a written agreement, titled "Last Chance Agreement Between the City of Olivet and William Edward Winters." The LCA required Plaintiff to be subject to six unannounced follow-up tests in the first 12 months of his return to work. The LCA further provided that Plaintiff would be discharged immediately for any further misconduct. Plaintiff signed the LCA on October 9, 2006, and the Olivet City Council accepted.

On October 11, 2006, Plaintiff returned to work. On June 28, 2007, he was terminated from his job with the City. Defendants claim that Plaintiff was fired because of his failure to comply with the terms of the LCA. Defendants further claim, among other reasons, that:

Plaintiff failed to pass a Department of Environmental Quality S-3 certification examination required by the State of Michigan, refused to re-take the exam, and consistently exhibited a negative attitude toward his supervisor and co-workers which worsened as he underwent the random drug tests. After Plaintiff filed for unemployment benefits, the City disclosed these reasons for Plaintiff's termination to the Department of Labor and Economic Growth Unemployment Insurance Agency in a letter dated July 11, 2007.

### B.   PROCEDURAL BACKGROUND

On June 6, 2010, Plaintiff, proceeding *pro se*, filed his Complaint on the basis of federal-question jurisdiction, naming the City and Lothamer as Defendants.  The Complaint listed the following Counts: Count I – retaliatory discharge under 42 U.S.C. § 1983; Count II – wrongful discharge; Count III – intentional infliction of emotional distress; and Count IV – discharge against public policy. On July 6, 2010, the Court entered an Order [dkt 3] dismissing Plaintiff's state-law claims (Counts II – IV).  Plaintiff's retaliation claim (Count I) is the only remaining claim before the Court.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

4

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. ANALYSIS

To survive Defendants' Motion for Summary Judgment, Plaintiff must establish a *prima facie* case of retaliation under the First Amendment to the U.S. Constitution. Plaintiff must demonstrate that: (1) he engaged in constitutionally protected speech; (2) adverse action was taken against him; and (3) there is a causal connection such that the adverse action was motivated at least in part by his protected speech. *Scarbrough v. Morgan Cnty. Bd. of Ed.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).  The Court finds that Plaintiff has failed to establish a *prima facie* case of First Amendment retaliation.

5

## A. CONSTITUTIONALLY PROTECTED SPEECH

Plaintiff claims that the protected speech occurred at Meeting II with the School Board on January 23, 2006. In examining the nature of that speech, the Court first turns to the threshold element in the *Scarbrough* analysis. To show that he engaged in constitutionally protected speech, Plaintiff must, at a minimum, show that his alleged speech at School Board Meeting II involved a matter of public concern. *Id.* at 255. Although speech that relates "to any matter of political, social, or other concern to the community" touches upon matters of public concern, *See Connick v. Myers,* 461 U.S. 138, 146 (1983), the court must determine "the *point* of the speech in question . . . [because] [c]ontroversial parts of speech advancing only private interests do not necessarily invoke First Amendment protection." *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1187 (6th Cir. 1995) (emphasis in original) (internal quotation and citation omitted). While elaborating on this determination, the Sixth Circuit has pointed to the following factors: "the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker." *Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004) (internal quotations and citations omitted).

With respect to the focus of the speech; passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest. *Id.* at 592-93. The intent or communicative purpose underlying an employee's statement is relevant, but not necessarily dispositive, when considering whether the statement may be fairly characterized as relating to a matter of public concern. *See Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir. 1997) (citing *Cliff v. Bd. of Sch. Comm'rs of Indianapolis, Ind.,* 42 F.3d 403, 409 (7th Cir. 1994)). Whether speech amounts to a matter of public concern is a question of law for the court.

6

*Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) (citation omitted).

Here, Plaintiff's claim is based on his speech that allegedly took place at Meeting II with the School Board on January 23, 2006. Plaintiff contends that this alleged speech was constitutionally protected, thereby precluding him from being terminated for the views expressed in the speech. Plaintiff's claim is flawed from the outset, however, because he has failed to articulate exactly what, if anything, he said or was prevented from saying during Meeting II. Plaintiff tries at length to characterize the speech as him bringing to light a matter of public concern—school officials' alleged "abuse and mistreatment of a teenage girl." Yet, Plaintiff does not even list, let alone substantiate, what he said to the School Board during Meeting II. As such, Plaintiff's allegations, as stated, must fail.

Notwithstanding Plaintiff's failure to adequately state his claim, the Court finds that Plaintiff's primary "focus," "point," or "communicative purpose" in requesting the meeting and engaging in the alleged speech was in fact to convince the School Board to reinstate Jewell— merely a *private* concern. *See Farhat*, 370 F.3d at 592. Plaintiff began his investigation because he believed that his nephew was innocent of the alleged sexual misconduct. Claiming to uncover what he saw as grounds for Jewell's reinstatement, Plaintiff specifically requested a "closed" and "confidential" meeting—Meeting II—with the School Board. Had Plaintiff's focus or communicative purpose been to reveal to the public the results of his investigation, then the more plausible outlet for his revelations would have been law enforcement or some other public channel. The fact that Plaintiff requested a "closed" and "confidential" session of the School Board makes it clear that his communicative purpose was not to inform the "general public" regarding a matter of public concern; it was to convince the School Board to allow Jewell to return to school.

Further, even if the focus or communicative purpose of Plaintiff's speech was to reveal to the "general public" the results of his investigation, Plaintiff has nevertheless failed to explain why his first and seemingly *only* attempt at doing so was byway of the "closed" and "confidential" meeting with the School Board.  The fact that Plaintiff emphasizes that Meeting II was the "only forum available" to him, while also appearing to have made no further attempts to report his allegations through other outlets, also tends to show that his communicative purpose was Jewell's reinstatement—a purely private matter.

As such, Plaintiff's *own* actions indicate that the focus of his statements was to advance his private interest in seeking Jewell's reinstatement and thus did not necessarily invoke First Amendment protection.  *See Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 678 (6th Cir. 2001).  Thus, Plaintiff has failed to establish that the focus of his speech was a matter of public concern.

### B.  CAUSAL CONNECTION BETWEEN SPEECH AND ADVERSE ACTION

Because Plaintiff has failed to satisfy the first element of the *Scarbrough* analysis, no further inquiry is necessary to grant Defendants' Motion.  The Court, however, finds that even assuming that Plaintiff's alleged speech was a matter of public concern, his claim would nevertheless fail because he has failed to establish any causal connection between the speech and his termination.

The second and third elements of a claim of First Amendment retaliation require a plaintiff to demonstrate that some adverse action was suffered and that the action was motivated at least in part by the plaintiff's protected speech. *See Scarbrough*, 470 F.3d at 255. To that end, Plaintiff must demonstrate "that the speech at issue represented a substantial or motivating factor in the adverse employment action."  *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (internal citations omitted).

8

Plaintiff has failed to establish that his alleged speech at School Board Meeting II was a substantial or motivating factor in his termination from Defendant City, a separate legal entity. First, Plaintiff has not provided any credible evidence to show that Lothamer was even aware of the alleged speech.  Plaintiff claims that Lothamer learned of the alleged speech through his friends and acquaintances on the School Board.  Using this single allegation, Plaintiff concludes that "a common person with normal intelligence understands that [Lothamer could learn of the speech] by a mere telephone call or a meeting on a street corner . . . . [Lothamer's] treatment of Plaintiff . . . demonstrates [that Lothamer was aware of the alleged speech.]"   Yet, Plaintiff offers no credible evidence to show that Lothamer placed a "mere telephone call" to, or participated in any "meeting on a street corner" with, school officials.   In fact, Plaintiff confirmed at his deposition that no city officials, including Lothamer, were present during Meeting II.  Moreover, Defendants have submitted evidence in the form of affidavits that the school officials never discussed Plaintiff's speech with any City officials, and that no City official, including Lothamer, discussed or had knowledge of Plaintiff's speech.[5]  This evidence is sufficient for Defendants to support the instant Motion, as the burden falls on Plaintiff to establish a *prima facie* case of retaliation. *See Scarbrough*, 470 F.3d at 255.

Second, Plaintiff has provided only speculation and conclusory statements to support his claim and thus cannot withstand Defendants' Motion. *See Hartsel v. Keys,* 87 F.3d 795, 801–02

---

[5] The school officials present at Meetings I and II have each submitted an affidavit denying that they have ever discussed anything that occurred during either meeting with Lothamer or any other City official.  These officials include Campbell, Sowles, and Olivet High School Principal Randal VanDyke.  Additionally, several City officials have also submitted affidavits stating that they were not present at either of the meetings and that, other than what they have learned from Plaintiff's filings in this lawsuit, they have no knowledge of anything that occurred during either meeting. These officials include Lothamer, City of Olivet Mayor Gary Peterson, and City Clerk/Treasurer Becky Palmer.  The City officials further affirm through their respective affidavits that they have never discussed either of the meetings with the school officials or any member of the School Board.

(6th Cir. 1996) (explaining that conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment).  For instance, Plaintiff claims that his filings have "proven as fact that . . . Lothamer was aware of the Plaintiff's comments."  For this, Plaintiff relies on the deposition of his sister (Jewell's mother), Tammy Knox, as "proof positive."  Yet, the Court's review of Knox's deposition indicates that she was discussing her allegations that someone she identified as Lothamer was following her and her daughter around the city and harassing them. Responding to a question about why Defendants would retaliate against Plaintiff, Knox replied with the conclusory statement that "the school is corrupt."   Thus, Plaintiff's "proof positive" deposition is in fact immaterial speculation that fails to establish that Lothamer had any knowledge of Plaintiff's alleged speech at Meeting II of which would have him retaliate against Plaintiff.

Moreover, Plaintiff argues that because "no one knew the reason why [he] was wrongfully discharged," it is inferable that the reason was his alleged speech. Plaintiff further asks the Court to "provide a more logical or believable explanation."  The Court finds Plaintiff's argument misplaced at best. Even if the reasons for Plaintiff's discharge were unknown to all, this is a moot point.   The sole focus for the Court is determining whether Plaintiff was discharged *in retaliation* for engaging in protected speech, as opposed to determining whether he was wrongfully discharged *in general*.   Insofar as it is Plaintiff who alleges retaliation, it is Plaintiff who then bears the burden of establishing a *prima facie* case.  *See Scarbrough*, 470 F.3d at 255.  Moreover, Plaintiff's broad assertion is clearly untrue—the Department of Labor and Economic Growth Unemployment Insurance Agency learned of Defendants' reasons for terminating Plaintiff in the July 11, 2007, letter from the City.  As such, Plaintiff's conclusory allegation that "no one" knew the reasons why Plaintiff was discharged is insufficient to establish a *prima facie* case of retaliation.

Last, the lack of temporal proximity between Plaintiff's alleged speech and his termination tends to disprove any causal connection. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("The absence of close temporal proximity and the presence of an obviously non-retaliatory basis for the defendants' decision amount to insufficient evidence to permit an inference of retaliatory motive."). Plaintiff's alleged speech occurred on January 23, 2006. Plaintiff was terminated on June 28, 2007. Thus, Plaintiff was not terminated until more than seventeen months had passed since his alleged speech. Defendants have offered non-retaliatory reasons for doing so. Whether such non-retaliatory reasons were legitimate is not the issue before the Court. Rather, the Court must determine whether Plaintiff has provided sufficient evidence to establish a causal connection between his alleged speech and his termination. As noted, Plaintiff has failed to establish such a causal connection.

More significantly, it is undisputed that Defendants had legitimate, non-retaliatory grounds for terminating Plaintiff prior to his actual termination. Plaintiff's alleged speech took place on January 23, 2006. On September 6, 2006, Plaintiff failed a drug test that constituted legitimate cause for his termination. Defendants did not terminate Plaintiff at that time, providing him instead with the opportunity to sign the LCA and return to work. This also tends to show that Plaintiff's subsequent firing was not caused by his alleged speech at the Meeting. Had Defendants wanted to fire Plaintiff for his alleged speech, they could have done so upon Plaintiff's failure to pass the drug test rather than allow Plaintiff to return to work under the provisions of the LCA. For these reasons, Plaintiff has failed to establish that his alleged speech was a motivating or substantial factor in his termination.

### V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt 23] is GRANTED.

11

IT IS SO ORDERED.

                                          S/Lawrence P. Zatkoff
Date:  October 6, 2011                    HON. LAWRENCE P. ZATKOFF
                                          UNITED STATES DISTRICT JUDGE